IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 7, 2005 Session

## ALEXANDER FORD-MERCURY, INC. v. CITY OF FRANKLIN, TENNESSEE, BOARD OF ZONING APPEALS

Appeal from the Chancery Court for Williamson County
No. 29830     Donald P. Harris, Chancellor

No. M2004-00246-COA-R3-CV - Filed March 8, 2005

This is a zoning case involving a free-standing sign.  The plaintiff seeks to replace it with another sign which does not conform to a new sign ordinance.  The plaintiff seeks the protection of the grandfather statute.  The Chancellor held that the grandfather statute did not apply.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM H. INMAN, SR. J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J.M.S. and WILLIAM B. CAIN, J., joined.

David H. King, Franklin, Tennessee, attorney for appellant, Alexander Ford-Mercury, Inc.

Douglas Berry, Nashville, Tennessee, attorney for appellee, City of Franklin, Tennessee, Board of Zoning Appeals.

### OPINION

The automobile dealership of the plaintiff was established in 1979 in the City of Franklin. Concurrently with the construction of the building a free-standing sign was erected to advertise the location of the dealership.  It was in compliance with applicable zoning ordinances of the City of Franklin which issued the required permits.  The sign was forty-three feet tall with a box of 155 square feet and was both economically and competitively satisfactory.

The plaintiff is a franchisee of Ford Motor Company which adopted a new, nationwide logo and consequently required the plaintiff to conform its sign accordingly.  The plaintiff thereupon contacted the City of Franklin seeking to replace the existing sign with a smaller one that comported with the franchisor's logo, and was advised by the codes officer that the proposed smaller sign was impermissible because it exceeded the dimensions permitted by the new city zoning ordinance, which provided that "no nonconforming sign shall be replaced, removed, reconstructed or relocated unless . . . the replaced reconstructed or relocated sign conforms to the provisions of the ordinance."

The new ordinance allowed signs with a maximum aggregate dimension of fifty square feet and twelve feet high. The decision of the codes officer was appealed to the Board of Zoning Appeals which denied relief. A petition for certiorari and declaratory judgment followed; after some skirmishing the parties agreed to remand the case to the Board of Zoning Appeals for its determination of this issue:

> Is the placement and reconstruction of the sign in the size and design proposed by the plaintiff necessary to the continued conduct of the plaintiff's business within the meaning of Tenn. Code Ann. § 13-7-208(d)?

Following a hearing the Board determined by a unanimous vote that the proposed new sign was not necessary for the continued conduct of the plaintiff's business. The Chancellor subsequently found (1) that the statute vested no right in the plaintiff to reconstruct the sign, and (2) that the Board did not act arbitrarily, illegally or unreasonably in disallowing reconstruction of the sign.[1]

The City argued that Tenn. Code Ann. § 13-7-208(d) was inapplicable because it did not apply to signs, but if so, that the plaintiff did not establish that the reconstruction of the sign was necessary to the continued conduct of the business. The Chancellor disagreed, in part, finding that the statute [§13-7-208(d)] applies to signs but only to the extent the sign is necessary to the continued commercial use of the property.

## Analysis

Tennessee Code Annotated § 13-7-208(d) controls. *See,* ***412 Corp v. Metro Govt***, 36 S.W.3d 469 (Tenn. Ct. App. 2000). It provides:

> Industrial, commercial, or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto immediately preceding a change in zoning shall be allowed to destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business subsequent to the zoning change; provided, that no destruction and rebuilding shall occur which shall act to change the use classification of the land as classified under any zoning regulation or exceptions thereto in effect immediately prior to or subsequent to a change in the zoning of the land area on which such industry or business is located. No building permit or like permission for demolition, construction, or landscaping shall be denied to an industry or business seeking to destroy and

---

[1] The plaintiff sought both a declaratory judgment and a writ of certiorari. The City moved to dismiss the demand for declaratory relief, arguing that the plaintiff was seeking to join an appellate action with an original action in order to enlarge the record beyond evidence presented to the Board. The motion was resolved by the agreed order of remand to the Board.

reconstruct facilities necessary to the continued conduct of the activities of that industry or business, where such conduct was permitted prior to a change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners.

This statute is the relevant part of the grandfather statutory scheme applicable to the peculiar facts of the case at Bar. The appellant insists that the ordinance which required that all replacement or reconstructed signs must comply with its provisions violates Tenn. Code Ann. § 13-7-208, the grandfather statute, which "is an exception to a restriction that allows all those already doing something to continue doing something, even if they would be stopped by the new restrictions." ***Coe v. City of Sevierville***, 21 S.W.3d 237 (Tenn. Ct. App. 2000). The grandfather statute provides a constitutional safeguard for a government in the enactment of zoning laws or ordinances which, in legal effect, may be ex post facto, and "they protect established businesses from later-enacted municipal zoning which would exclude them." *See,* ***Outdoor West of Tenn. Inc. v. City of Johnson City,*** 39 S.W.3d 131 (Tenn. Ct. App. 2000).

A party seeking the protection of the grandfather statute has the burden of proving that its use is a preexisting nonconforming use which qualifies for the protection of the statute. ***Coe***, 21 S.W.3d at 243; ***Lamar Advertising v. City of Knoxville***, 905 S.W.2d 175, 176 (Tenn. Ct. App. 1995). Generally, in order to qualify for the exception in Tenn. Code Ann. § 13-7-208, parties must make two threshold showings: (1) that there has been a change in zoning and (2) the use to which they put their land was permitted prior to the zoning change. ***Lamar***, 905 S.W.2d at 176; ***Rives v. City of Clarksville***, 618 S.W.2d 502, 505 (Tenn. Ct. App. 1981).

These threshold issues were clearly satisfied by the plaintiff, but the dispositive issue is whether the present sign may be destroyed and reconstructed because it is "necessary to the conduct of an automobile dealership." The parties seemingly recognized the significance of this phrase, as did the Chancellor; approached negatively, if the Board had found that the proposed sign was necessary to the conduct of the plaintiff's business, Tenn. Code Ann. §13-7-208(d) would be applicable and the plaintiff would prevail in this action, assuming appellate review was otherwise favorable.

The defendant argues that subsection (c) of Tenn. Code Ann. § 13-7-208, rather than subsection (d) is controlling of the case. Subsection (c) provides:

Industrial, commercial or other business establishments in operation and permitted to operate under zoning regulations or exceptions thereto in effect immediately preceding a change in zoning shall be allowed to expand operations and construct additional facilities which involve an actual continuance and expansion of the activities of the

-3-

industry or business which were permitted and being conducted prior to the change in zoning; provided, that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affected by the change in zoning, so as to avoid nuisances to adjoining landowners. No building permit or like permission for construction of landscaping shall be denied to an industry or business seeking to expand and continue activities conducted by that industry or business which were permitted prior to the change in zoning; provided that there is a reasonable amount of space for such expansion on the property owned by such industry or business situated within the area which is affect by the change in zoning, so as to avoid nuisances to adjoining landowner.

In *412 Corp*, the import of subsection (c) and (d), as each contrasted, was explained.

Subsection (c) governs the expansion of existing commercial uses while subsection (d) applies to the demolition and replacement of facilities. The General Assembly envisioned that property owners permitted to continue using their property contrary to the zoning laws might desire to expand their businesses or might, for some reason, desire to construct replacement facilities. Accordingly, T. C. A. § 13-7-208(c) authorizes a property owner continuing to operate its business under T. C. A. § 13-7-208(b) "to expand operations and construct additional facilities which involve an actual continuation and expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning." Likewise, T. C. A. § 13-7-208(d) authorizes businesses "to destroy present facilities and reconstruct new facilities necessary to the conduct of such industry or business."[2]

We again addressed the distinction between sections (c) and (d) in *Outdoor West of Tenn., Inc. v. City of Johnson City*, 39 S.W.3d 131 (Tenn. Ct. App. 2000) as follows:

Subsection (c) of that statute applies to situations in which the business seeks to expand, and provides that in such cases, the petitioner shall be allowed to expand operation and construct additional facilities which involve an actual continuance and

---

[2] It should be noted that the plaintiff did not particularize the section of Tenn. Code Ann. § 13-7-208 it relied upon, and when the case was remanded to the Board of Zoning Appeals for further findings, the agreed order limited the findings as to whether, under section (d) of the statute, the reconstructed sign was necessary for the continued conduct of the plaintiff's business.

expansion of the activities of the industry or business which were permitted and being conducted prior to the change in zoning. . . . Subsection (d) applies to situations in which the business seeks to demolish and rebuild, and provides that in such cases, the petitioner shall be allowed to destroy present facilities and reconstruct new facilities necessary to the conduct of such industry of business subsequent to the zoning change. . . . The City argues that subsection (d) applies, that Lamar has failed to prove that the destruction and reconstruction is "necessary to the conduct of such industry or business," and therefore, the judgment of the Trial Court must be reversed. We agree with the City that subsection (d) appears to require a higher standard of proof by Lamar, since under that section, Lamar must show that the reconstruction is "necessary to the conduct of [the] industry or business." The record in this case is not clear as to whether Lamar plans for all of the existing signs to be demolished and new signs installed, thus implicating subsection (d), or whether, in some cases, the existing sign is to be retained by enlarged, thus implicating subsection (c).

The appellant argues that it sought only to continue an activity of its business - advertising - and never intended to demolish and rebuild "within the ambit of subsection (d)." But we think the plain language of subsection (d) is wholly supportive of the conclusion of the trial judge. *See, Shelton v. ADS Envtl. Ser.*, 100 S.W.3d 214 (Tenn. 2003).

We are not certain of the purport of this argument in light of the litigated issue of the plaintiff's right to replace the existing, non-conforming sign with another non-conforming sign; suffice to state that the grandfather provision allows the plaintiff - and thus overrides the ordinance - to replace the sign and construct a new one if the reconstruction is necessary to the conduct of his dealership.

The appellant next argues that if Tenn. Code Ann. § 13-7-208(d) controls, the trial court erred in finding that the appellant failed to prove by a preponderance of the evidence that a sign of similar size and height is necessary to conduct it business. We review this finding *de novo* with a presumption of correctness, Tenn. Code Ann. § 50-6-225(e)(2), Rule 13(d) Tenn. R. App. P., and we have reviewed the record to determine where the preponderance of the evidence lies. *See, Wingert v. Government of Sumner County*, 908 S.W.2d 921 (Tenn. 1995). Three witnesses testified at the evidentiary hearing before the Board of Zoning Appeals,[3] one of whom was R. C. Alexander, founder of the Ford dealership in 1979. He now owns eight dealerships. He testified that it was crucial that the sign be seen from its location at the I-65 and Highway 96 interchange in Franklin, and that if a potential customer looks eastwardly at the interchange, a number of

---

[3] By agreement of the parties the testimony of these witnesses could be considered by the trial court in the declaratory judgment action and the certiorari action.

competitive automobile dealers may be seen. He testified that without a sign of similar size and height "I don't think I'll be able to make a living." His expert witness, Patrick Anderson, who is much experienced in the conduct of automobile dealerships, testified that he had studied the plaintiff's business, with emphasis upon the impact and effect of the sign. He testified that a sign is an integral part of a commercial business, and that a sign of about the same scale as the existing sign is necessary to the conduct of the plaintiff's business, because of its clear aid in directing potential customers to the Ford dealership. Mr. Anderson's testimony is critiqued because of the unsupported assumption that a 61% reduction in the size of the sign would result in a purported 61% reduction in the number of people who would see the sign. The trial judge characterized the testimony of Mr. Anderson as "not meaningful," possibly because Mr. Anderson conceded that he was not qualified to determine any correlation between the reduction in the size of the sign and the plaintiff's ability to continue in the conduct of its business. An assistant City Planner, Tom Marsh, exhibited fourteen photographs of other automobile dealerships in Franklin depicting smaller signs advertising their businesses, a point which clearly impressed the trial judge, and by clear inference, the Board of Zoning Appeals.

The plaintiff argues that the grandfather statute protects not merely the right to engage in business but the right to engage in business as profitably as before the new regulation was enacted, and that if local governments take away the means to conduct the business profitably, they have effectively zoned the business out of operation. We have no quarrel whatsoever with this argument, but the proof falls far short of supporting a determination that a sign conforming to the new ordinance would have the claimed effect on the plaintiff's business.

The plaintiff had the burden of proving that the reconstruction of the sign was necessary to the continued conduct of its business. This is a heavy burden to show that the administrative action was arbitrary or illegal. *McCallen v. City of Memphis*, 786 S.W.2d 633 (Tenn. 1990). Just how heavy the burden is may be found in the statement "if there is any possible means" to uphold a zoning decision, whether it be legislative or administrative, the court is bound to do so, *McCallen, supra.*

The judgment is affirmed at the costs of the appellant.

_____
WILLIAM H. INMAN, SENIOR JUDGE